GROSS LOGE DES DEUTSCHEN ORDEN DER HARUGARI DES STAATES ILLINOIS, Defendant in Error, *vs.* MARIA BRAUSCH *et al.* Plaintiffs in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. BENEFIT SOCIETIES—*when creating of sick and death benefit funds is in furtherance of subordinate lodge's charter.* Where one of the objects for which a subordinate lodge is chartered by the grand lodge is the creating and maintaining of sick and death benefit funds, the creation of such funds by the subordinate lodge is in furtherance of such object notwithstanding the entire fund is paid in by the members of the subordinate lodge.

2. SAME—*when sick and death benefit funds belong to grand lodge on surrender of the charter.* Where the constitution of the grand lodge provides that upon the surrender of the subordinate lodge's charter all property and funds shall be surrendered to the grand lodge, sick and death benefit funds, created by the subordinate lodge in furtherance of one of the objects for which it was chartered, belong to the grand lodge notwithstanding the funds were raised wholly by the members of the subordinate lodge, and the members of the subordinate lodge cannot, even by unanimous consent, divide the funds among themselves or transfer them to another lodge.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

MATTHEW J. HUSS, WILLIAM J. AMMEN, FELIX J. STREYCKMANS, and ALBERT B. JOYNER, for plaintiffs in error.

SOL. LEVISOHN, and ISRAEL COWEN, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

On January 5, 1905, the defendant in error, Gross Loge des Deutschen Orden der Harugari des Staates Illinois, (Grand Lodge of the German Order of Harugari of the State of Illinois,) hereinafter referred to as the Illinois grand lodge, together with the United States Grand Lodge of the German Order of Harugari, as complainants, filed four bills of complaint in the circuit court of Cook county against various individuals who had formerly been officers and members of certain subordinate lodges hereinafter named, seeking discovery and accounting. The four bills of complaint were identical in form and substance, the only difference being the names of the defendants to the several bills. Thereafter, on May 15, 1905, the bills were amended by striking out the name of the United States grand lodge as one of the complainants, that lodge disclaiming any interest in the subject matter of the suits. The cases were consolidated in the circuit court and hearing was had before the chancellor, which resulted in the entry of a decree in each case on February 15, 1909, dismissing the bill for want of equity. The Illinois grand lodge prosecuted an appeal from each decree to the Appellate Court for the First District, where the cases were assigned to the branch court and there consolidated for hearing upon one set of abstracts and briefs. The Appellate Court reversed the decrees of the circuit court and remanded each case, with directions to the circuit court to enter a decree therein in favor of the complainant "for the amount of money shown by the evidence to be in the hands of or possessed by the respective defendants." The cases have been brought to this court by *certiorari,* and have been consolidated for hearing upon one set of abstracts and briefs.

The controversy in the consolidated case arises out of the surrender of the charters of four subordinate lodges of the Order of Harugari, viz., Treue Schwester Lodge No. 79, Hertha Lodge No. 73, Einigkeit Lodge No. 74 and Immergrün Lodge No. 82, all of the Hertha (woman's) Degree of the Order of Harugari,—defendant in error claiming that upon the surrender of these charters it became entitled to all the property and funds of the subordinate lodges, while plaintiffs in error contend that the money in the sick and death benefit funds of the subordinate lodges belonged to the members of the respective lodges, and could, with the unanimous consent of such members, be distributed among them or transferred to other lodges formed by them, after severing their connection with the Order of Harugari.

The Order of Harugari is an order composed of German-speaking persons. Its general object is to preserve and spread the German language wherever the order exists, to facilitate and promote the intellectual and material welfare of its members and improve and elevate social conditions among German families. The United States grand lodge is the supreme body of the order, and all other lodges of the order exist only by virtue of charters issued by it. It is, and always has been since its organization, in 1869, a voluntary, unincorporated association. The Illinois grand lodge was chartered by the United States grand lodge in 1869 and was given supervisory powers over the subordinate lodges in this State. Various subordinate lodges have from time to time been chartered in Illinois by the United States grand lodge by and with the consent of the Illinois grand lodge, expressed by joining with the United States grand lodge in issuing charters to such subordinate lodges. The Illinois grand lodge is also a corporation organized under the laws of the State of Illinois, having for its objects benevolence, mutual assistance, social intercourse

among its members and the promulgation of the secrets of the order, and since 1893 has been operating as a fraternal beneficiary society under and in accordance with the provisions of the act of June 22, 1893, regulating such societies. (Laws of 1893, p. 130.) A more detailed history of these grand lodges may be found in *Freundschaft Lodge* v. *Alchenburger,* 235 Ill. 438. Prior to September 5, 1890, only men were eligible to membership in the Order of Harugari, and various subordinate lodges of men had been chartered in Illinois. On the latter date Hertha (woman's) Degree was created and established by the United States grand lodge, and provision was made for chartering and organizing women's lodges under the jurisdiction of the United States and State grand lodges of Harugari. In the years 1894 and 1895 the four subordinate lodges above named were granted charters, which on their face purport to be issued by the grand lodges of the United States and the State of Illinois, and are signed by the officers of the United States grand lodge and the officers of the Illinois grand lodge, respectively, and have the seals of the respective grand lodges affixed thereto. These charters, which were identical except as to the names of the subordinate lodges and the dates of issue, provided that the lodge should consist of at least five members, and authorized it to make such by-laws as it might deem best for its welfare, provided that the same should not be in conflict with the constitutions of the grand lodges. Each charter also contained a provision which, translated into English, is as follows: "This lodge shall enjoy all the rights and privileges of a lodge as long as it moves within the limits of the constitution. If it transgresses against the same, then its charter, papers and all belongings shall be forfeited to the grand lodge and must be delivered up to the same. In case this lodge cannot exist, all of its property must be delivered to the grand lodge." During the month of September,

1904, the four subordinate lodges above named became dissatisfied with the action of the Illinois grand lodge in increasing the annual dues of members of the Hertha Degree from twenty-five cents to $1.20. By unanimous consent the members of each of these four subordinate lodges surrendered the charters of the subordinate lodges to the Illinois grand lodge, severed their connection with the Order of Harugari, returned all property to the Illinois grand lodge except the money in the sick and death benefit funds of the respective subordinate lodges, established and incorporated under the laws of Illinois new lodges independent of the Order of Harugari, divided the money in the sick and death benefit funds among themselves and then transferred this money to the new lodges. Thereafter the Illinois grand lodge made demand, in writing, upon the former officers of the subordinate lodges for these funds, which demand was refused. The four suits above mentioned were then brought against these former officers and members of the subordinate lodges for discovery and accounting. After issues had been joined and the hearing begun, the new lodges to which the funds of the former subordinate lodges had been transferred were made defendants to the respective bills.

It appears from the record that members of lodges belonging to the Hertha Degree were not given the same rights and privileges as were members of lodges composed wholly of men, in this: The women were not entitled to receive any sick or death benefits from the Illinois grand lodge, while the men belonging to subordinate lodges were entitled to such benefits from the grand lodge. It appears, however, that the fund from which such benefits were paid by the Illinois grand lodge was maintained by assessments upon the male members of the order, only, and that members of the Hertha Degree contributed nothing towards this fund. Each of the four subordinate lodges above

named had established a sick and death benefit fund of its own, maintained entirely by assessments upon its members and disbursed to members in case of sickness, and to their families in case of death, in amounts specified by the by-laws of the respective subordinate lodges. Plaintiffs in error contend that inasmuch as this money was contributed by the members of the subordinate lodge and held by the subordinate lodge for the use of its members and their families, the members were the sole owners and beneficiaries of the fund, and could, by unanimous consent, divide the money among themselves or transfer it to another lodge of which they had all become members. In this contention plaintiffs in error ignore material facts, and treat the case as though these funds had been established and maintained by the members of the respective subordinate lodges for objects and purposes wholly aside and apart from those for which those lodges had been chartered by the grand lodges of the Order of Harugari, and that the members had, in maintaining these funds, acted as individuals and not as constituent parts of an order which had as one of its objects financial relief to members in case of sickness and to their families in case of death.

The constitution of each of these four lodges, being the constitution prescribed by the United States grand lodge for all subordinate lodges of the Hertha Degree, declares the objects of these subordinate lodges to be, to give German-speaking women an opportunity to take active part in promoting the tenets of the German Order of Harugari, to furnish mutual aid in sickness, need and death, as well as intimate social relations between families through the influence of lodges and social meetings. It provides that the dues shall be fixed by by-laws, but shall not be less than one dollar quarterly; that every member who is entitled to sick benefits according to the terms of the by-laws, shall, in case of sickness or bodily injury rendering work impossible, receive a weekly benefit, the amount, commence-

ment and duration of which must be set forth in the by-laws; that at the death of a member the lodge shall advance not less than $20 for funeral expenses; that if a sister takes sick at a foreign place she shall report herself sick to a there existing woman's lodge, and that the lodge to which she reports herself sick must treat her exactly the same as one of its members and pay her the proper sick benefit weekly, reimbursement to be made, however, by the lodge of which the sick sister is a member. This constitution also requires each lodge, on the first of July of each year, to report the number of members who received sick benefits during the year, together with the amount of money paid out for sick and death benefits and the amount of money remaining in the treasury. It also provides that in case the lodge neglects its lawful duty or transgresses against the laws of the order, the grand lodge can declare its charter forfeited, and it then becomes the duty of the officers to deliver to the grand secretary, or to the person deputized by the grand lodge therefor, the charter, books, papers, utensils and the treasury funds of the lodge. In initiating candidates in lodges of the Hertha Degree each candidate is required to promise adherence to the constitution and by-laws of the lodge, and is also required to sign the constitution.

The constitution prescribed by the United States grand lodge for State grand lodges provides that if a subordinate lodge is suspended or expelled or its charter surrendered or forfeited, it becomes the duty of officers or members of the subordinate lodge, on demand, "to assign, transfer and deliver the charter, books, papers, property and funds of the lodge" to the person authorized by the grand lodge to receive the same, and that all effects and funds so received by the grand lodge shall be kept separate and apart from the other funds and property of the grand lodge, and that such funds shall never be and constitute a part of the funds of the grand lodge but shall always be preserved and re-

turned to the lodge after the expiration of its suspension and re-investment of its charter; provided, however, if such a lodge is not renewed or re-installed within three years the funds shall be embodied in the general funds of the grand lodge.

It is evident from the provisions in the constitution of the lodges of the Hertha Degree to which attention has above been directed, that in creating and maintaining sick and death benefit funds, and in disbursing the same, the subordinate lodges of this degree were engaged in carrying out one of the objects for which they had been chartered by the grand lodges, and that the money in these funds was held by the officers of the respective lodges for the uses and purposes and subject to the conditions specified in the constitutions prescribed by the United States grand lodge for lodges under its jurisdiction. Each member of a lodge of the Hertha Degree became bound to abide by the provisions in the charter of the lodge and in the constitutions of the order. She was entitled to participate in the sick and death benefit funds of the lodge as long as she remained a member of the lodge, but upon severing her connection with the lodge she forfeited all right to such benefits and had no claim to any of the money in the sick and death benefit funds of the lodge, notwithstanding the fact that those funds were composed, in part, of money paid in by her in the form of dues and assessments. (*Freundschaft Lodge* v. *Alchenburger, supra.*) Upon the withdrawal of all the members of the lodge they severally and collectively lost all right to further benefits from these funds, and under the constitution of the order, by which they had, upon becoming members, agreed to be bound, the Illinois grand lodge became entitled to receive these funds for the uses and purposes set forth in that constitution, viz., to hold them separate and apart from its other funds and property, and to return them to the subordinate lodges, respectively, in case of re-investment of their respective

charters within three years, or in case there should be no such re-investment of charter within such period, then to embody them in the general funds of the grand lodge.

In *State Council* v. *Sharp,* 38 N. J. Eq. 24, and in *Gross Loge* v. *Wolfer,* 42 Col. 393, it was held, under facts similar to those here presented, that upon the voluntary dissolution of a subordinate lodge the grand lodge became entitled to the sick and death benefit funds in the hands of the officers of the subordinate lodge at the time of the dissolution, and that the members of the subordinate lodge could not, by unanimous consent, divide such funds among themselves or transfer them to another lodge or order.

Plaintiffs in error also urge estoppel against the Illinois grand lodge. The basis for this contention is found in the minutes of the annual meeting of the Illinois grand lodge held in 1904. The extract from those minutes relied on by plaintiffs in error in support of their contention is as follows: "All propositions having been considered, it was resolved to recognize the Hertha Degree as a branch of the order from to-day on, and to make it optional with the sisters of the Hertha Degree either to organize their own grand lodge or to submit to the jurisdiction of this grand lodge." Plaintiffs in error contend that by this resolution they were given the option either to remain a part of the Order of Harugari or to withdraw from that order and establish an order of their own independent of the Order of Harugari, and that after choosing the latter alternative and surrendering their charters to the Illinois grand lodge and organizing new lodges independent of the Order of Harugari, the Illinois grand lodge is estopped from claiming the moneys in the sick and death benefit funds which have been transferred to the new lodges. The evident meaning of this resolution is, that members of the Hertha Degree are given the option either to remain under the jurisdiction of the Illinois grand lodge, or to organize a

256 — 13

grand lodge of their own, independent of the Illinois grand lodge but of the Order of Harugari, under the jurisdiction of the United States grand lodge. Any other interpretation of the resolution does violence to its plain intent and meaning.

While defendant in error is entitled to relief, and the circuit court therefore erred in dismissing the bills for want of equity, the judgment of the Appellate Court is erroneous in the directions given upon remanding. The relief sought in each of the consolidated cases was discovery and accounting. The prayer for discovery was based upon the allegations that complainant, after diligent inquiry, had not been able to learn what person or persons had possession of the funds and property of the subordinate lodge or whether those funds consisted of cash or evidences of indebtedness, but had been informed that the individuals who were made defendants held all or some part of such property and funds. The relief sought under this prayer was, that the defendants disclose, first, the amount of money, securities and funds belonging to the subordinate lodge at the time the charter was surrendered; second, whether the defendants have possession of such moneys, securities and funds, and in what proportion; third, what person now has the custody or possession of any part of such moneys, securities and funds; and fourth, the names of the person or persons who had the custody or possession of any part of such moneys, securities and funds at the time of the surrender of the charter. The prayer for accounting was, that the defendants, or some of them, according to the discovery prayed for, be adjudged to hold all moneys and other property which they have of the former subordinate lodge as trustees for the complainant, that they be required to account to complainant for the same, and that upon an adjustment thereof the said persons may be ordered to turn over all such moneys and other property to complainant. The new lodges, which had been formed

and incorporated by the members of the subordinate lodges after severing their connection with the Order of Harugari, were not defendants to the bills as originally filed but were later brought in by amendment. After being made defendants they filed answers, which were adopted by the individual defendants. These answers disclosed that all the funds of the former subordinate lodges had been, during September, 1904, transferred to the new lodges, but denied that the complainant had any right to or interest in the same. The proof showed that the funds had been transferred to the new lodges as set forth in the answers, and the only controversy before the court upon the pleadings was whether those funds belonged to the Illinois grand lodge. Had the circuit court found that the funds belonged to the complainant, as it should have found, it then became its duty to enter a decree establishing complainant's right to those funds and ordering the defendant corporation, or new lodge, to pay to complainant the amount received by it of the funds formerly held by the subordinate lodge of the Order of Harugari.

The decree of the circuit court and the judgment of the Appellate Court in each of the consolidated cases are reversed and the causes remanded to the circuit court, with directions to enter a decree in each case establishing the complainant's right to the funds held by the subordinate lodge mentioned in the bill therein, and ordering the defendant corporation to pay to the complainant the amount received by such defendant corporation of the funds formerly held by such subordinate lodge. Each party shall pay its own costs in this court.

*Reversed and remanded, with directions.*