(Nos. 10833-34.—Judgment affirmed.)

JOHN LANG *et al.* Defendants in Error, *vs.* JAMES W. HEDENBERG, Plaintiff in Error.—ROBERT F. SUMMERS, Defendant in Error, *vs.* JAMES W. HEDENBERG, Plaintiff in Error.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

1. PRACTICE—*when jurisdiction of the Supreme Court to award writ of certiorari does not depend upon amount involved.* Where a bill is filed for the purpose of declaring a contract for the sale of land to be void, to cancel a recorded affidavit as a cloud upon complainant's title and to forfeit the earnest money deposited, the Supreme Court has jurisdiction to award a writ of *certiorari* to review the judgment of the Appellate Court though the amount of earnest money does not exceed $1000.

2. CONTRACTS—*rule as to forfeiture where a contract calls for successive acts.* Where a contract for the sale of land calls for the deposit by the purchaser of a certain sum of money before the deposit of the deed by the vendor, the right of the latter to declare a forfeiture for failure of the purchaser to deposit the money does not depend upon the deposit of the deed by the vendor.

3. SAME—*what is a proper basis for declaring forfeiture.* Even though the vendor in a contract for the sale of land may by his conduct acquiesce in a temporary extension of the time for the making of a cash deposit by the purchaser, yet if the vendor thereafter serves a written notice fixing a date in the future as the time when the deposit must be made or·the contract be forfeited, such notice is a proper basis for declaring a forfeiture at the expiration of the time fixed.

4. SAME—*courts of equity recognize right of competent parties to provide for forfeiture of earnest money.* Courts of equity, as well as courts of law, recognize the right of competent parties to provide in a contract for the sale of land for the forfeiture of the earnest money on breach of the contract by the purchaser.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

BRADLEY, HARPER & EHEIM, (THOMAS E. D. BRADLEY, and EDWARD J. FARRELL, of counsel,) for plaintiff in error.

DAWSON & DAWSON, (GEORGE E. DAWSON, of counsel,) for defendant in error Robert F. Summers.

RUBENS, FISCHER, MOSSER & BARNUM, for defendants in error John Lang and Luise Lang.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill in equity was filed by defendant in error Summers and one by defendants in error the Langs, in the circuit court of Cook county, against plaintiff in error, each praying, among other things, that a certain contract between the respective parties to such bills for the sale of real estate be declared void, that an affidavit filed in the recorder's office of Cook county by plaintiff in error be removed as a cloud on the title of defendants in error, and that plaintiff in error be enjoined from setting up any further rights under said contracts. The two contracts were on material points practically identical, except as to the parties and the land involved. Both cases were referred to the same master in chancery, who reported as to both that the relief prayed for should be granted. A decree was entered by the circuit court in each case approving the master's report. On appeal to the Appellate Court both decrees were affirmed, and both cases have been brought to this court on petition for *certiorari*. They have since been consolidated.

The two tracts of land involved in these cases lie adjoining one another in Cook county, near the Chicago, Milwaukee and St. Paul Railroad Company's right of way. Both were originally owned by defendant in error Summers, who had contracted to convey a portion of the land to the Langs. Plaintiff in error desiring to purchase both tracts together as one tract, entered into negotiations with the three defendants in error at the same time, which culminated in the two separate contracts involved in these proceedings, dated October 21 and October 23, 1913, respec-

tively. The consideration in each was $29,500. Each provided, among other things, that $1000 earnest money was paid down at the time of the execution of the contract, to be applied on the purchase when consummated, and that the purchaser agreed to pay, within thirty days after the title had been examined and found good or accepted by him, the further sum of $4000, and the further sum of $5000 within sixty days after such examination and acceptance of title, provided "a good and sufficient general warranty deed conveying to said purchaser a good and merchantable title to said premises, subject as aforesaid, shall be ready for delivery. The balance to be paid as follows: The remaining sum of $19,500 by purchaser giving his promissory note therefor, payable in installments of $6500 each, on or before one, two and three years, respectively, after its date, with interest at the rate of five and one-half per cent per annum, payable semi-annually, said note to be secured by a trust deed of even date with said note on said premises, in such form as seller may direct. * * * This contract and the said earnest money shall be held by the Chicago Title and Trust Company in escrow, and when the payment of the respective sums of $4000 and $5000 shall have been deposited by purchaser with said Chicago Title and Trust Company in accordance with the terms of this contract, seller shall deposit with said company a good and sufficient warranty deed conveying said property to purchaser and purchaser shall deposit the notes and trust deed aforesaid securing said balance of $19,500 purchase money, said deeds shall be recorded, the examination of title continued by said Chicago Title and Trust Company, and upon its report that purchaser has good title to said real estate, subject to said incumbrance of $19,500, said sum of $10,-000 held by it and said notes and trust deed shall be delivered by it to sellers and said warranty deed to purchaser. Should said purchaser fail to perform this contract and make the payments herein provided for within the times

herein specified, any sums deposited by said purchaser with said Chicago Title and Trust Company in accordance with the provisions of this contract shall be forfeited as hereinafter provided and same shall be paid to sellers and this contract delivered up to him, and said escrow agreement shall so provide." Time was made the essence of the contracts.

These contracts were put in escrow with said Chicago Title and Trust Company, along with the earnest money of $1000. The abstract was brought down to the date of said contract and delivered to Hedenberg, and the proof shows, and the master found, that he stated the title was satisfactory and that he would shortly make the further payments provided by the contracts. When the time for the payment of the $4000 arrived, plaintiff in error on repeated demands failed to pay the money, and also failed to pay the $5000 when it fell due, on the ground that he did not have the money. Evidence was offered before the master to the effect that plaintiff in error intended, when he started the negotiations, to have these contracts taken off his hands by certain people in Canada, and because of their failure to take over the contracts he was not able to make these payments as he expected. In view of the record in this case and the fact that the plaintiff in error executed these contracts we do not think this evidence material. The evidence is in accord with the master's finding and the decree of the circuit court that the plaintiff in error failed to make the payments for the reason that he was unable to get the money, and that he gave no other reason and made no objection of any kind to the title of defendants in error.

On April 13, 1914, each of the defendants in error gave a notice to plaintiff in error, in which it was demanded that he comply with all the terms, stipulations and provisions of said contract, and that unless he complied with such terms and deposited the money and the note and trust deed securing the same, as required by the contract, and performed "all of the other terms and conditions of the said contract

by you to be performed to entitle you to a deed from the undersigned, on or before the 4th day of May, A. D. 1914," the signer or signers of the notice would forfeit and cancel said contract and elect to retain the $1000 earnest money as liquidated damages. On May 5, 1914, defendants in error notified plaintiff in error in writing that they elected to declare the contracts forfeited and to retain said $1000 as liquidated damages. On May 29, 1914, plaintiff in error filed an affidavit in the recorder's office of Cook county claiming an interest, as purchaser, in said property acquired by said written contracts, stating that he had paid as earnest money $1000, and that the time for the performance of the various provisions in said contracts had by agreement been extended from time to time, and that defendants in error were seeking to fix an arbitrary time for performance and to cancel the contracts and retain the $1000, and that the contracts were in full force and effect. The bill in each case sought to have this affidavit declared null and void and removed as a cloud on the title. Without question, from the record before us it is shown, and plaintiff in error concedes, that he had not deposited the $4000 or $5000 payments or performed any of the conditions required of him by said contracts before receiving said notices of May 5 that the contracts had been forfeited.

Counsel for defendants in error insist that this court is without jurisdiction as the amount involved is not more than $1000. There might be merit in this contention if the bill were filed in each case only for the purpose of forfeiting the $1000, but each bill was filed for the purpose of removing a cloud from the title, canceling the contract and enjoining any further act on the part of the plaintiff in error to enforce the contract. Clearly, the purpose of these suits was not the recovery of money or property, and therefore the right of review in this court is not determined by the amount involved. (*Tosetti Brewing Co.* v. *Koehler,* 200 Ill. 369; *Baber* v. *Pittsburg, Cincinnati and St. Louis*

*Railroad Co.* 93 id. 342.) This court has jurisdiction of the cases.

Counsel for plaintiff in error argue that the notices of April 13, 1914, extended the time of payments until May 4, 1914, and that the time was also extended by the failure of defendants in error to enforce the forfeiture of the contracts, and by their acquiescing, in effect, in the extension of the time after various talks with plaintiff in error, in which the latter stated that he was not able to pay then but would pay later. No testimony is found in the record that tends to support the argument of counsel that defendants in error agreed to an extension of the time for making the payments, neither do we think any such construction can be put upon the notices of April 13.

Counsel further strongly insist that defendants in error cannot have the relief granted by the decrees and by the judgment of the Appellate Court because they failed to deposit with the Chicago Title and Trust Company the respective warranty deeds required by the contract. Little, if any, support for this argument can be found in this record. Manifestly, under the provisions of the contract heretofore quoted, plaintiff in error was to make the deposit, under each contract, of $4000 within thirty days after the acceptance of the title and $5000 within sixty days thereafter. He accepted the title, making no objection to it, before either of these payments was due. These payments were to be deposited with the Chicago Title and Trust Company before defendants in error were called upon to deposit their respective warranty deeds conveying good and merchantable title to said premises with said trust company.

It is argued by counsel for plaintiff in error that these deeds were required to be deposited at or before the time these payments were made, basing this argument apparently upon the form of said notices of April 13. No such construction can be placed thereon. Said notices required plaintiff in error to carry out all the provisions of the con-

tracts, and stated that defendants in error were ready and willing to carry out their part. No other construction can be put upon these notices, taken in connection with the contracts, than that defendants in error required plaintiff in error to make the $4000 and $5000 deposits with the Chicago Title and Trust Company before the warranty deeds were required to be deposited with such trust company. Until such deposits were made plaintiff in error was in no position to seek or require the deposit of said warranty deeds with the trust company.

Counsel for plaintiff in error also insist, and cite numerous authorities in support of their claim, that they, defendants in error, especially the Langs, cannot forfeit the contracts because they had not deposited the warranty deeds with the Chicago Title and Trust Company before they forfeited the contract, and that the Langs were not in condition to deposit such deeds as they did not have the legal title to their property but only a contract for the same. The evidence shows, we think, without question, as found by the master, that the plaintiff in error refused to perform the contract upon the sole ground that he did not have the money to make the payments within the prescribed time. In *Ashbaugh* v. *Murphy*, 90 Ill. 182, it was held that where a defective title is tendered and the conveyance is refused on the ground that the purchaser did not have the money he could not object to the title, the court saying (p. 183): "Had he himself been ready to perform the contract and objected to the deed because the property was incumbered, plaintiff might have been able to show the property was free from all incumbrance and the title perfect. But defendant makes no pretense that he was ready and able and willing to perform the contract." In *Johnson* v. *Johnson,* 43 Minn. 5, it was held that it was not important that there was a cloud on the title which could have been removed when the vendee stated that he could not get the money to perform; that it was not necessary that complainants have

title until the time they had agreed to deposit the deed in escrow, and before that time defendant had made default and could not require complainants to obtain title. To the same effect see *Runkle* v. *Johnson,* 30 Ill. 328. We think the master properly found from the evidence that Hedenberg made no objection to the title but failed to carry out the agreement by reason only of his inability to provide the necessary money.

In this connection counsel argue that defendants in error had not given notice to plaintiff in error as to the form of the trust deed he was required to give under the contracts. No time is stated in the contracts as to when plaintiff in error shall be informed as to the form of the trust deed. A reasonable construction of the contracts would only require that after the deposit of the $4000 and $5000 had been made and the warranty deed also had been deposited then the note and trust deed were required to be given, and not before. Defendants in error would not be in default as to specifying the form of the trust deed until the time was reached in which it was required to be given.

We do not think there is any merit in the argument of counsel that the deposit of the $5000 was to be made concurrently with the depositing of the warranty deeds, but even conceding that the argument had force as to the payment of the $5000, there can be no question that the $4000 deposit was required to be made before the warranty deeds were deposited. The only effect of said notice of April 13 as to the question of the time of these two payments of $4000 and $5000 was, that if both these payments were made before May 4 then defendants in error would be required to deposit at once the warranty deeds as required by the contracts, and all the other requirements as to the note and trust deed would follow without delay. If a contract calls for successive acts, first by one party and then by the other, there is no breach by one if the precedent act has not been performed by the other. (*Osgood* v. *Skinner,* 211

Ill. 229; *Cohen* v. *Segal,* 253 id. 34, and cited cases; *Kissack* v. *Bourke,* 224 id. 352.) Whether or not there has been a waiver of any of the terms of a given contract depends upon the facts of each particular case. (*Fox* v. *Grange,* 261 Ill. 116.) It clearly appears from this record that the defendants in error did not intend to waive any of the terms and conditions of the contracts in favor of plaintiff in error except in so far as said notice of April 13 extended the time of making said two payments of $4000 and $5000 to May 4, 1914, even though he was at that time in default. Plaintiff in error having failed to perform the parts of the contracts that he was required to perform before the deposit of the warranty deeds, the law did not require the doing of the useless and futile act of depositing the deeds with the Chicago Title and Trust Company before the contracts could be forfeited. *Lyman* v. *Gedney,* 114 Ill. 388; *Scott* v. *Beach,* 172 id. 273; *Osgood* v. *Skinner, supra; Cohen* v. *Segal, supra;* 39 Cyc. 1377.

In this connection counsel for plaintiff in error argue that defendants in error the Langs did not have title in their name at the time they served the notice of forfeiture on May 5, 1914; that they only had a contract for·a deed from Summers. No such objection was made at that time and plaintiff in error was not in a position to make such objection, as he had not carried out his part of the contract required to be performed before the deed was deposited. The contract itself would preclude plaintiff in error from objecting before the time set for the deposit of the warranty deeds with the Chicago Title and Trust Company, and his act of accepting the abstract as satisfactory shows conclusively that he was satisfied with the condition of the title and satisfied that the Langs were in a position to deed the property described in their contract. The fact that defendants in error could take advantage of a default in the contracts earlier than plaintiff in error does not make the contracts invalid. (*Loud* v. *Pomona Land Co.* 153 U. S. 564.)

Even though there were force in the argument of counsel that defendants in error by their action had suspended or postponed temporarily the right to insist upon a forfeiture, the giving of the definite and specific notice of April 13, 1914, of defendants in error's intention to declare the forfeiture furnished the proper basis for thereafter forfeiting the contracts. *Monson* v. *Bragdon,* 159 Ill. 61; *Watson* v. *White,* 152 id. 364.

Counsel for plaintiff in error further argue that the result of the decrees is that a court of equity is lending its aid to enforce the forfeiture of the $1000 earnest money. Undoubtedly, under the authorities, equity will not declare or enforce a forfeiture where it is harsh or inequitable to do so, (*Tarr* v. *Stearman,* 264 Ill. 110, and cited cases,) but all the authorities recognize that competent parties may make a contract as to penalties and forfeitures, and that courts of equity, as well as courts of law, will recognize the rights of the parties as to such penalties or forfeitures. Here a court of equity is not enforcing a forfeiture. The decrees simply hold that the defendants in error rightly declared a forfeiture under the contracts. This court in *Harper* v. *Tidholm,* 155 Ill. 370, and *Bucklen* v. *Hasterlik,* 155 id. 423, upheld decrees as to forfeitures, and held that equity had jurisdiction to hold that contracts somewhat similar to those here were properly rescinded by the parties and that the vendor was entitled to retain the earnest money, saying in *Harper* v. *Tidholm,* (p. 376) : "The forfeiture had been declared by the complainant and the contract ended by him, in strict accordance with its terms, before the bill was filed, but Harper having placed the contract on record it was a cloud on his title, and the bill was filed to remove that cloud. In affording this relief it of course became necessary for the court to determine whether the contract was still subsisting or not, and the effect of the decree was to find that it had been terminated, in accordance with its terms, by the acts of the parties them-

selves." On the reasoning of those cases the decrees in the cases here under consideration held correctly on this point.

We find no reversible error in the decrees, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*